677 F.Supp.2d 539 (2009)
Zulayka RUIZ, on behalf of her minor child, A.J.H., Plaintiff
v.
Michael J. ASTRUE, Commissioner of the Social Security Administration, Defendant.
Civil No. 09-CV-573 (VLB)(TPS).
United States District Court, D. Connecticut.
October 23, 2009.
*540 Dennis G. Ciccarillo, Michalik, Bauer, Silvia & Ciccarillo, LLP, New Britain, CT, for Plaintiff.
Brenda M. Green, U.S. Attorney's Office, Bridgeport, CT, for Defendant.

MAGISTRATE'S OPINION
THOMAS P. SMITH, United States Magistrate Judge.
There is no question in this action under 42 U.S.C. § 405(g) that the plaintiffs child, a little girl ("AJH") now nine years old, has a severe impairment within the meaning of the regulations: AJH has cerebral palsy. 20 C.F.R. 416.924(c). The issue is whether her impairments equal a listed impairment, thus entitling her to a finding of per se disability and an award of benefits. The Administrative Law Judge ("ALJ") found that AJH's impairments failed to meet or equal a listed impairment. See 20 C.F.R. pt. 404, subpt. P., App. 1; 20 C.F.R. §§ 416.924-26. Determining whether "substantial evidence" supports the ALJ's findings requires an examination of the record for relevant evidence.
To ascertain whether a combination of impairments medically or functionally equal a listed impairment, the ALJ must analyze a claimant's function in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. "To functionally equal the listings, the claimant's impairment or combination of impairments must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." (Tr. 8, § 5); 20 C.F.R. § 416.926a(d).
The ALJ concluded that AJH's impairments were neither "extreme" nor "marked." The plaintiff asserts that "substantial *541 evidence" does not support this conclusion in certain key respects. First, the plaintiff contends that "substantial evidence" does not support the ALJ's determination that AJH's limitations are "less than marked" in the domain of "acquiring and using information." Second, the plaintiff asserts that "substantial evidence" does not support the ALJ's conclusion that AJH's limitations are "less than marked" in the domain of "attending and completing tasks." Third, the plaintiff argues that substantial evidence does not support the ALJ's finding that AJH's limitations are "less than marked" in the domain of "moving about and manipulating objects."

I.
Turning to the first relevant domain ("acquiring and using information"), the court finds that substantial evidence does not support the ALJ's finding. Rather, the court finds far more evidence of severe limitations in this domain than the ALJ acknowledges. In fact, substantial evidence reveals "extreme" limitation in this domain. The ALJ wrings from the report of Dr. Daniel Witt, Ph.D., every scintilla of evidence that favors the Commissioner's position. Unfortunately, however, insufficient weight is given to other, more compelling clinical observations in the report which indicate that AJH's limitations in this domain are "severe."
Dr. Witt's assessment (Tr. 171-184) reveals that AJH is a happy little girl who is likeable and tries to please, but is seriously hampered by impairments. She is doing "well" only in the sense that she could be doing worse, not in the sense that she is rising above her limitations. She works more slowly than her peers and, as Dr. Witt noted, she is frequently "spaced out." She trails notably behind her peers in "on task" behavior. (Tr. 177-178) "Her speech is marked by poor articulation, telegraphic speech or incomplete utterances, and apparent difficulties with oral grammar and syntax." (Tr. 177) Overall, Dr. Witt's observations and assessments suggest that, at best, her impairments impose "marked" limitations in this domain, but, more realistically, her limitations in this domain are "severe". The proposition that AJH's limitations in this domain are, as the ALJ found, "less than marked" is not supported by "substantial" evidence.
That AJH's limitations are "severe" conclusion finds additional support in an assessment of AJH by her kindergarten teacher at the DiLoreto School. The assessment notes, once again, that, while AJH is a motivated and likeable little girl, she has a "very serious problem" reading and comprehending written material and expressing ideas in written form. She has a "serious problem" comprehending and completing math problems. And she has an "obvious problem" in learning new material, recalling and applying previously-learned material, and applying problemsolving skills in class discussions. (Tr. 123) Further, the assessment indicates that many of these domain-related problems occur daily, with some occurring hourly. (Tr. 124)
Again, with respect to this same domain, various comprehensive evaluations undertaken by the New Britain public school system suggest that AJH's impairments were much more severe and pervasive than the ALJ acknowledged. Her speech articulation and readiness skills concerned the evaluators. (Tr. 92) Her attention span was notably "inappropriate" and she had a difficult time attending to adult-directed tasks. (Tr. 91) Her speech production and articulation were of considerable concern. (Tr. 92) Her attention span remained low. (Tr. 167) Her attention was "fleeting at times." She was found to be "at risk" for depression and anxiety. Plaintiff's *542 memorandum provides a far more accurate assessment of the effect of AJH's impairments than do the ALJ's observations and findings. (Pl.'s Mem. at 6-8)
Fairly weighed, the evidence shows that AJH meets at least three of the descriptors mentioned in the pertinent regulations. 20 C.F.R. § 416.926a(g)(2)(iv), for example, states that a child "should be able to use increasing complex language (vocabulary and grammar) to share information and ideas with individuals or groups, asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others." AJH cannot do this.
Similarly, 20 C.F.R. § 416.926a(g)(iii) describes a child who has "difficulty recalling important things that [she] learned in school yesterday." AJH is just such a child. She cannot remember what she did yesterday or why. "And even if you explain it today to her, and you ask her tomorrow, she couldn't give you what we had told her today and why she did it. She would not remember. She would tell you, I don't know." (Tr. 34-35) This corroborative testimony both substantiates the clinical observations of examining sources, and is supported by them.
Finally, 20 C.F.R. § 416.926a(g)(3)(v) addresses language skills, noting that a even a child of less than AJH's age should have certain language skills such as "rhyming words" and "using words to ask questions, give answers, follow directions, describe things, explain what you mean, and tell stories." Here, there is clear evidence that AJH speaks haltingly, in a telegraphic style, and does not use complete sentences. She does not acquire and use information. When she speaks, her mother explained, "[s]he gets very frustrated and angry and says 'forget it'. . . . [S]he'll give you the beginning or ending of a word or she'll miss a whole . . . sentence, so you're trying to come up with what she's trying to say, and if you say something wrong, she'll get angry and start speaks in two-to-three word phrases and tends to comprehend only in context and within learned routines." (Tr. 174)
AJH's experience in kindergarten reveals just how extreme her limitations are. As her mother explained, "[t]hey would never understand what she was explaining to them, so the teacher would call me on my cell phone and put [AJH] on so I could talk to her and then translate it to the teacher, because she would cry all day because nobody understood what she was trying to tell them." (Tr. 31-32). For these reasons and those set forth in plaintiffs able memorandum at 9-13, the court finds that the ALJ's conclusion that AJH suffered from "less than marked" limitations is not supported by substantial evidence with respect to the domain of "acquiring and using information."
In the magistrate judge's view, the overall evidence must be considered, 20 C.F.R. § 416.926a(e)(1)(I)(ii), not in a grudging way, but in light of the remedial, beneficent purposes of the Social Security Act. Here, the overall evidentiary recordincluding teacher observations and educational and psychological testing which establishes that AJH has a "borderline" verbal IQsatisfactorily establishes that AJH has an extreme limitation in the domain of "acquiring and using information."
AJH's impairments produce an "extreme" limitation in the domain discussed above. Thus, the impairments functionally equal the listed impairment. This determination alone leads to a finding of disability, and requires entry of an order that the Commissioner calculate and pay benefits.

II.
Although technically it is unnecessary to consider the two remaining domains implicated *543 in this case, the court will nevertheless do so for purposes of completeness. With respect to these two domains, the court finds that "substantial evidence" does not support the ALJ's findings that the plaintiffs impairments are "less than marked" in these domains. As noted previously, to functionally equal the listings, an impairment must result in "marked" limitations in two domains. The court finds that AJH's impairments result in "marked" limitations in each of these two additional domains.
The first domain in which AJH has a marked impairment is that of "attending and completing tasks." Substantial evidence does not support the ALJ's finding to the contrary. The only evidence that supports this finding is the evaluation from AJH's kindergarten teacher, which reports difficulty in completing work accurately and in following multi-step instructions. (Tr. 14, 124) Also, non-examining experts did not find attending and completing tasks to be a problem. These failures to observe and Ms. Vass's passing allusion are insufficient bases on which to find a "less than marked" degree in this domain. This is especially so when contrasted with the much mightier evidence to the contrary.
Other evaluations by the New Britain public school system establish that AJH's "attention span was found to be inappropriate" (Tr. 91). She was also found to have a difficult time attending to structured, adult-directed tasks. Id. At other times her attention to tasks was found to be "fleeting." (Tr. 172-173) It was also noted that AJH quickly became inattentive when she encountered difficulties, and redirection to tasks became difficult. (Tr: 169) Dr. Witt also observed that AJH was frequently "off task" and that she experienced "inordinate difficulty" with attention compared to her peers. (Tr. 177-78, 180-81) Overall, AJH's testing revealed, among other things, "attention problems." All these objective assessments are corroborated by the testimony of AJH's mother, who testified that when it comes to attending to and completing tasks, "I would have to help her complete it or she'll get sidetracked or distracted and not want to do it or she wouldn't remember. She'll get frustrated and just sit there. . . ." (Tr. 34-35)
The weight of the evidence is that AJH fits the descriptors of 20 C.F.R. § 416.926a(h)(2)(i); (iii); (iv); and (v), in that she cannot follow directions and concentrate on details; she cannot focus her attention on a variety of situations; and is unable to focus sufficiently to avoid careless mistakes. Nor can AJH complete family chores. She is easily sidetracked, frustrated, and prone to distracting herself.
The foregoing demonstrates that the evidence underlying the ALJ's finding of "less than marked" limitations is not substantial when compared with the competing evidence which supports plaintiff's claim. The court finds that AJH's impairments result in "marked" limitations in this domain. The finding of "marked" limitations in this domain, coupled with the finding of a "severe" limitation in the first domain discussed herein, required a finding that AJH's impairments equal a listed impairment, and that she is therefore per se disabled.

III.
The final domain implicated in this case also need not be discussed at length in view of the court's previous findings, yet will be addressed for the sake of completeness. This domain involves AJH's limitations vel non with respect to "moving about and manipulating objects." Once again, the court finds that substantial *544 evidence does not support the ALJ's finding that AJH's limitations here are "less than marked." The ALJ acknowledged that AJH had some difficulties walking, but noted that she could wind a toy, catch a ball, and ride a bike. The plaintiff points out, however, that the focus of AJH's limitation is on moving about, not manual dexterity, manipulation of the hand and handheld objects. AJH's kindergarten teacher assessed AJH as having "serious" problem with all functions involving moving about. (Tr. 126) Her examining pediatrician noted that AJH suffers from right leg pain and muscle spasms due to cerebral palsy. (Tr. 237) In early 2008, AJH was diagnosed with right spastic hemiparesis, with decreased range of motion, decreased strength, decreased functional strength, decreased balance, and asymmetrical motion skills. (Tr. 223) Later in the year, due to AJH's increased tripping, plaintiff was placed in braces for both daytime and nighttime use. (Tr. 212, 223) She has been found to have imbalance during both static and dynamic activities, as well as asymmetrical motor skills that decrease further her already limited ability to kick, jump, and hop. She cannot hop with her right leg, and because her right foot is inturned, she cannot skip. (Tr. 224) She uses her left leg for almost everything and cannot negotiate stairs. (Tr. 229) AJH drags her leg and trips over it because it is turned inward.
AJH fits the descriptors of 20 C.F.R. § 416.926a(j)(3)(i)-(iii). For all of the foregoing reasons, a fair reading of the record demonstrates that AJH's limitation in this last domain is at least "marked." Substantial evidence does not support the ALJ's finding to the contrary. For these reasons, and those discussed above, the plaintiffs motion for a judgment reversing the Commissioner should be GRANTED, and this case should be remanded for the limited purpose of calculating and paying plaintiffs benefits. The Commissioner's cross motion should be DENIED. This is a recommended ruling (or report and recommendation). The defendant may seek timely review of this recommended ruling in accordance with Rule 72(b) of the Federal Rules of Civil Procedure. Failure to do so may bar further review. 28 U.S.C. § 636(b)(1)(B); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).